SIGNED THIS: December 21, 2015

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CURTIS LEE BALDWIN and | ) | Case No.  13-81445 |
| NICOLE RENEE BALDWIN, | ) | |
|         Debtors. | ) | |
| | ) | |
| | ) | |
| BRADLEY HUNTER and | ) | |
| EVONNE HILLIARD, | ) | |
|         Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. No.  13-8062 |
| | ) | |
| CURTIS LEE BALDWIN, | ) | |
|         Defendant. | ) | |

## O P I N I O N

This matter came before the Court for trial on the Amended Complaint filed by the Plaintiffs, Bradley Hunter and Evonne Hilliard, against the Defendant and Debtor, Curtis Lee Baldwin, seeking a determination under section 523(a)(2)(A) that a judgment debt is nondischargeable as one for money obtained by false pretenses, a false representation, or actual fraud.

The Debtor filed a Chapter 7 petition on July 22, 2013, scheduling the Plaintiffs as unsecured creditors holding a judgment debt in the amount of $14,795. The judgment, issued by the Fulton County Circuit Court in November, 2012, arose out of an action for breach of contract. Under the contract, the Plaintiffs hired the Debtor to put on a new roof, and install a new furnace and central air conditioning unit at a house owned by Evonne Hilliard in Vermont, Illinois. The Debtor made substantial repairs to the roof, but did not install shingles and did not purchase the furnace and air conditioning units after he ran out of money.

The Plaintiffs moved for Summary Judgment in this adversary proceeding on the theory that the Fulton County Circuit Court had held that the Debtor had defrauded the Plaintiffs, arguing that they were entitled to a judgment of nondischargeability based on principles of preclusion. This Court denied that motion, finding it frivolously brought, since fraud was not at issue in the state court lawsuit, brought solely as an action for breach of contract, and the circuit court judge stated that he was not making any finding that the Debtor acted fraudulently.

The Amended Complaint focuses on allegations concerning the Debtor's lack of licensing and insurance. It alleges that the Debtor falsely represented to the Plaintiffs that he was licensed and insured, an allegation he denied in his answer. At trial, both Plaintiffs testified that the Debtor made verbal representation to them at the time the contract was signed. The Debtor testified that he made no such representation and was never asked by the Plaintiffs whether he was licensed and insured. The Court carefully evaluated the credibility of the witnesses. The Court finds that the Debtor's testimony was forthright and

truthful. The Court makes the finding of fact that the Debtor did not make a representation to the Plaintiffs that he was licensed and insured.

Almost all of the balance of the testimony, including the testimony of six individuals, in addition to the Debtor, who performed work for the Debtor on the job in question, pertained to what work was performed and how long it took. After listening to the conflicting testimony, the Court determines that substantial work was performed on the house over a period of fifteen to twenty working days. Introduced into evidence were receipts for materials purchased by the Debtor for the job. The first receipt is dated April 17, 2009, and the last one is dated May 12, 2009, a period of twenty-six days.

The work performed included a tear-off of much of the old roof decking or sheeting because of rot and replacement with new plywood sheeting (OSB); removal and re-build of the soffits and fascia and installation of gutters; installation of 30 lb felt paper; installation of a new flat rubber roof on a back section of the house; installation of two new doors and related framing work. The roof repairs were entirely completed and it was ready to shingle.

The Debtor did not purchase shingles for the roof, an air conditioning unit or a furnace because he ran out of money due to the extra work performed to get the roof ready for shingles due to its condition being worse than anticipated. The Debtor testified that he used up the $14,500 received from the Plaintiffs on labor and materials to complete the work summarized above. His testimony was unrebutted. As explained below, the lengthy testimony concerning the details of exactly what work was done, how long it took, and whether the time it took was reasonable, bears little relevance to the issue before this Court: whether the Debtor obtained the $14,500 by a false representation or actual fraud.

3

Section 523(a)(2)(A) provides that a debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In order for a creditor to except a debt from discharge under section 523(a)(2)(A), the creditor must show that (1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied. *Ojeda v. Goldberg,* 599 F.3d 712, 716-17, (7th Cir. 2010). Once those elements are established, the creditor must then prove a loss proximately caused by its justifiable reliance. *Id.* at 721.

Apart from a misrepresentation of a material fact, actual fraud encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000). In order to establish actual fraud, a creditor must prove (1) a fraud occurred, (2) the debtor intended to defraud the creditor, and (3) the fraud created the debt that is the subject of the nondischargeability action. *Id.* at 893.

A necessary element under each prong of section 523(a)(2)(A) is proof of the debtor's intent to deceive. *In re Hanson,* 432 B.R. 758 (Bankr.N.D.Ill. 2010). A debtor's intent to defraud is measured by a subjective standard and is ascertained by the totality of the circumstances of the case. *In re Kucera,* 373 B.R. 878 (Bankr.C.D.Ill. 2007). The focus is upon the manner in which the debtor obtained the funds. *In re Graham,* 472 B.R. 524 (Bankr.W.D.Wis. 2012). Subsequent conduct is only relevant to the extent that it reflects

4

the debtor's state of mind at the time the funds were obtained. *In re Copeland,* 291 B.R. 740 (Bankr.E.D.Tenn. 2003).

The creditor bears the burden to prove each element of the claim by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654 (1991). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Matter of Scarlata,* 979 F.2d 521, 524 (7th Cir. 1992).

It is well settled that a breach of contract, even an intentional breach, is not actionable under section 523(a)(2)(A). *In re Sasses,* 438 B.R. 631, 648 (Bankr.W.D.Wis. 2010); *In re Hill,* 425 B.R. 766, 775 (Bankr.W.D.N.C. 2010). A failure to honor one's contractual obligation is nothing more than breach of contract, unless the promise of performance was made with an actual intent not to perform. *United States ex rel. Main v. Oakland City Univ.,* 426 F.3d 914, 917 (7th Cir. 2005); *Bower v. Jones,* 978 F.2d 1004, 1011-12 (7th Cir. 1992).

Once the contract was signed and the Debtor had received the $14,500, he hired a crew and promptly commenced work. Once the old shingles were torn off (whether three layers or four), substantial rot was revealed. The damaged sheeting was removed and new sheeting was purchased and installed. The sheeting on the front porch roof was rotted away and had to be completely replaced. The old roofing material on the flat roof section was removed and the roof was prepared for the installation of a new rubber roof, which was then installed. The soffits around the main roof were rebuilt. The main roof was covered with 30 lb felt paper and then with plastic sheeting to protect it from the weather. The Debtor also installed two new doors requested by the Plaintiffs with reframing required.

It is worth noting that the Debtor, aside from having substantial experience as a roofer, is an experienced carpenter, which were the skills needed to adequately perform the substantial repairs, especially for the soffits and fascia for the proper hanging of the gutters, and the installation of the new doors.

One of the most typical indicia of fraud in a case involving a contract to perform work is nonperformance by the contractor after being paid in advance. The Plaintiffs argue that the Debtor "took the money and ran," an argument that is wholly unsupported by the evidence. The Debtor's testimony that the $14,500 was used for labor and materials to make repairs and improvements to Ms. Hilliard's house is unrebutted. No evidence was presented by the Plaintiffs to indicate that any of the funds were used on other construction projects or for any purpose unrelated to the project in question. The Debtor testified that he did not purchase the shingles, air conditioner or furnace because he had used up all of the funds paid by the Plaintiffs and had insufficient funds of his own. The evidence supports the conclusion that the condition of the roof was worse than anticipated by the Debtor when he bid the project, that he nevertheless made all of the needed repairs in order to "do the job right" for the Plaintiffs, his neighbors. He kept Mr. Hunter apprised of the poor condition of the roof on several occasions, but Mr. Hunter ultimately refused to pay the additional funds requested by the Debtor in order to finish the project.

The evidence clearly supports the conclusion that the Debtor intended to perform his contractual obligations at the time he entered into the contract and received Plaintiffs' payment. There is no evidence that he ever developed a fraudulent intent at any time. The Debtor, with his own labor and that of his crew, made all the necessary repairs and

6

preparation for shingling the main roof, which could have been completed in a day or two if the shingles had been purchased. The flat roof was completed. There is no credible evidence that the Debtor "took the money and ran," that the work wasn't performed as he described, or that the work wasn't performed in a competent, workman-like fashion. (The Plaintiffs testified that one of the new doors was not installed properly, but their testimony was uncorroborated.)

Several witnesses had obvious biases. The Debtor's son worked on the job for him and was a witness at trial. Two witnesses for the Plaintiffs who attempted to cast aspersions against the Debtor, his testimony, and the testimony of his witnesses, appeared to be biased against the Debtor and the Court has taken that into account in evaluating their testimony. (Troy Hunter is the brother of Bradley Hunter; Lawrence Taylor was argumentative and openly sarcastic of the Debtor.)

The Plaintiffs complained bitterly that the Debtor left the job for ten days or so when he went out of state to see a new grandchild. The evidence indicates, however, that all of the work described herein was completed before he left and that the roof was protected with a waterproof covering. The fact that he went out of state at that point is no indication of fraud.

As the state court found, the Debtor may have underbid this project. It is also apparent that the contract did not contain an express provision permitting "extra" or "unanticipated" work to be performed on a time and materials basis. The Debtor may have breached the contract, but he did not commit fraud. The evidence does not support any findings that would prove fraud, such as that the Debtor promised good work but intended

all along to do defective work, or that he took the job planning to abandon it unfinished, or that he intended not to finish the work or purchase the materials when he took the money. *See Reeves v. Davis,* 638 F.3d 549, 554-55, (7th Cir. 2011).

The evidence indicates that the Debtor effectively abandoned the job after his return from Wyoming. But he was intending to finish the job when he left as he asked his wife to approach the Plaintiffs with a modified contract proposal requesting an additional $3,637 to enable him to purchase the shingles, air conditioner and furnace. The $14,500 was received before the Debtor commenced work, weeks before he decided to abandon the project. *See In re Blair,* 2011 WL 1770307 (Bankr.N.D.Ill. 2011).

Finally, providing promised services under a contract is a strong rebuttal of an accusation that the promisor never intended to perform. The evidence is uncontradicted that the Debtor made substantial repairs to Ms. Hilliard's property, repairs that she and Mr. Hunter requested be performed. Although the record contains no expert testimony as to the value of the work performed, given the extent of the repairs and the time, labor, materials and skill required, it is apparent that the value of the work done approximated the funds paid of $14,500. While the state court found that the Debtor could not receive any credit or offset for the substantial improvements made to the property for purposes of the breach of contract action, a court considering a fraud claim must take into account the value provided by the person being accused of fraud. Here it is readily apparent that Ms. Hilliard received substantial value from the Debtor's efforts to fulfill the contract. The net loss, if any, actually suffered by her is far less than the state court judgment amount, and that loss is attributable largely to the condition of the property, not to any fraudulent

8

conduct of the Debtor.

The Plaintiffs have failed to carry their burden to prove by a preponderance of the evidence that the judgment debt was one for money obtained by false pretenses, a false representation, or actual fraud. The debt is dischargeable.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###